NOT FOR PUBLICATION

| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY<br>**Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>In Re:<br>　　Wayne Burt Pte. Ltd. (In Liquidation),<br>　　　　　　　　　　　　Debtor. | Case No. 24-19956 (MBK)<br><br>Hearing Date: November 19, 2024<br><br>Chapter 15<br><br>Judge:  Michael B. Kaplan |

## MEMORANDUM OPINION

This matter comes before the Court on a Motion for an Order Recognizing and Giving Full Force and Effect to the Singapore Cetex Order[1] (the "Motion", ECF No. 3) filed by Farooq Ahmad Mann, in his capacity as foreign representative (the "Foreign Representative") for the foreign insolvency estate of Wayne Burt Pte. Ltd. ("Wayne Burt") now pending before the Singapore High Court. Creditor Vertiv, Inc. and its affiliates, Vertiv Capital, Inc., and Gnaritas, Inc. (collectively, the "Vertiv Entities" or "Vertiv") oppose the Motion. The Court has fully considered the parties' submissions, as well as the arguments raised during the hearing on November 19, 2024. For the reasons set forth below, the Court determines that recognition and enforcement of the Singapore Cetex Order is appropriate under 11 U.S.C. §§ 1521 and 1507, and the principles of international comity. Accordingly, the Foreign Representative's Motion is GRANTED.

### I.　　Jurisdiction

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended

---

[1] Defined below.

1

September 18, 2012, referring all bankruptcy cases to the bankruptcy court. Recognition of foreign proceedings is a statutory core proceeding and this Court has constitutional authority to enter a final order. 28 U.S.C. § 157(b)(2)(A) & (P). Venue is proper in this Court pursuant to 28 U.S.C. § 1410. The following constitutes the Court's finding of fact pursuant to FED. R. BANKR. P. 7052.[2]

## II. Background and Procedural History

**The Loan Agreement**

The Vertiv Entities are Delaware corporations, with their principal places of business in Princeton, New Jersey, and Wayne Burt is a Singapore corporation, with its principal place of business in Singapore. Vertiv and Wayne Burt are counterparties to a loan agreement pursuant to which Vertiv loaned money to Wayne Burt.[3] On July 18, 2014, in contemplation of the loan, the parties entered into a memorandum of understanding (the "Memorandum of Understanding"). *Cert. of Krishna Ghanta* 70, ECF No. 30. The Memorandum of Understanding provided that Vertiv would loan Wayne Burt between $12 million and $20 million for a period of three years at 15% interest to be secured by a pledge of certain shares of stock. *Id.* On April 5, 2015, Vertiv Entities made three separate loans to Wayne Burt pursuant to three separate loan agreements (the "Loan Agreements") and promissory notes (the "Promissory Notes") totaling $16 million (the "Loans"). *Id.* at 5-31. As security for the Loans, Wayne Burt executed a stock pledge agreement (the "Stock Pledge Agreement" together with the Memorandum of Understanding, the Loan Agreements, and the Promissory Notes, the "Loan Documents") in favor of Vertiv pledging 29,651,068 shares of stock in an India-based company known as Cetex Petrochemicals, Ltd. ("Cetex"). *Id.* at 32. The

---

[2] To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

[3] The Foreign Representative's disputes Vertiv's classification of this transaction as a loan.

Stock Pledge Agreement permits Vertiv to bring a lawsuit in any court of competent jurisdiction. *Id.* Pursuant to the Stock Pledge Agreement, the shares of stock were transferred to Vertiv, and are currently in the possession of Vertiv. The Stock Pledge Agreement is "governed by, and construed in accordance with the laws of the State of New York or Singapore." *Id.* Vertiv alleges that, on January 10, 2018, Wayne Burt defaulted on the Loans by failing to make the required payments.

**The Singapore Liquidation Proceeding**

On September 14, 2018, M.R.K. Enterprises Pte. Ltd. (the "Petitioning Creditor"), another creditor of Wayne Burt, issued a statutory demand pursuant to Section 254(2) of the Companies Act of Singapore (the "Singapore Companies Act") seeking satisfaction of a loan (the "Statutory Demand"). Wayne Burt did not satisfy the Statutory Demand. *Decl. of Farooq Ahmad Mann* 6, ECF No. 4. On October 23, 2018, the Petitioning Creditor filed a winding up application with the Singapore High Court, thereby commencing the Singapore liquidation proceeding, Case No. HC/CWU 25212018 (the "Singapore Liquidation Proceeding"). *Id.* at 23. On November 16, 2018, the Honorable Justice Woo Bih Li of the Singapore High Court entered an order directing that Wayne Burt be wound up and appointing the Foreign Representative, Farooq Ahmad Mann, as the sole liquidator. *Id.* at 6-7. The liquidation process of Wayne Burt remains ongoing in Singapore under the Foreign Representative's direction and subject to the supervision of the Singapore High Court. *Id.* at 10.

**The District Court Litigation**

On January 10, 2020, over a year after the commencement of the Singapore Liquidation Proceeding, the Vertiv Entities filed a verified complaint in the District Court for the District of New Jersey, Civ. Action No. 3:20-cv-00363 (the "District Court Litigation") to enforce the Loan Documents and the Stock Pledge Agreement. *Id.* at 11. Two weeks later the District Court entered

3

a consent judgment against Wayne Burt. *Id.* Approximately one month later, on February 27, 2020, the District Court entered a revised consent judgment. *Id.* at 12. The following September, Vertiv brought a second action in the District Court in order to name Wayne Burt's India subsidiary as an additional defendant. *Id.* The District Court again entered a consent judgment in this second action. *Id.* On February 26, 2021, Wayne Burt moved to vacate the consent judgments in both cases, contending that the Liquidation Proceeding had divested Wayne Burt's former directors of the authority to legally bind Wayne Burt. *Id.* On July 23, 2021, the District Court vacated both judgments, finding that Wayne Burt's former directors did not have standing to bind Wayne Burt in light of the Singapore Liquidation Proceeding. *Id.* On September 21, 2021, the Vertiv Entities filed an amended complaint in the District Court Litigation (the "Amended Complaint"). *Id.* at 13. On November 17, 2021, the Foreign Representative filed a motion to dismiss the Amended Complaint arguing that the principles of international comity precluded the Vertiv Entities from bringing such an action. *Id.* On November 30, 2022, the District Court granted the motion to dismiss, finding that extending comity to the Singapore Liquidation Proceeding was warranted. *Id.* On December 1, 2022, the Vertiv Entities appealed the District Court's ruling on the motion to dismiss to the Third Circuit (the "Appeal"). *Id.* at 14.

**The Cetex Shares Litigation**

The Foreign Representative issued demand letters to the Vertiv Entities and their U.S. counsel for the return of the Cetex share certificates. *Id.* The Vertiv Entities failed to return the Cetex share certificates. *Id.* On June 27, 2023, the Foreign Representative commenced proceedings before the General Division of the High Court of the Republic of Singapore (the "Singapore General Division Court"), Case No. HC/OC 409/2023 (the "Cetex Shares Litigation"), against the Vertiv Entities seeking, among other things, a declaratory judgment that the Vertiv Entities return

4

the Cetex shares to Wayne Burt. *Id.* Despite being served, the Vertiv Entities did not participate in the Cetex Shares Litigation. Accordingly, the Foreign Representative proceeded to seek a default judgment against the Vertiv Entities. On August 15, 2023, the Vertiv Entities were served with the Cetex Shares Litigation service papers (*Id.* at 23), and on August 21, 2023, copies were provided to the Vertiv Entities' U.S. counsel. *Id.* at 14. On October 17, 2023, the Singapore General Division Court entered an order requiring the Vertiv Entities to return the Cetex shares to Wayne Burt (the "Singapore Cetex Order"). *Id.* at 15.

**Third Circuit Opinion**

On February 1, 2024, the United States Court of Appeals for the Third Circuit issued its opinion clarifying the standard courts must apply when deciding whether to abstain from adjudicating a case in deference to foreign insolvency proceedings and remanding the case to the District Court to assess certain limited questions. Following remand from the Third Circuit, the Foreign Representative renewed the motion to dismiss the District Court Litigation. *Id.* at 17.

**The Chapter 15 Case**

On October 8, 2024, the Foreign Representative commenced this Chapter 15 case (the "Chapter 15 Case") seeking recognition of the Singapore Liquidation Proceeding. Also, on October 8, 2024, the Foreign Representative filed the instant Motion. *Motion*, ECF No. 3. On October 29, 2024, Vertiv filed its Brief in Opposition to the Motion. *Brief in Opposition to Motion*, ECF No. 29. On November 3, 2024, the Foreign Representative filed a response to Vertiv's Brief in Opposition to the Motion. *Response to Brief in Opposition*, ECF No. 33. By way of the Motion, the Foreign Representative argues that enforcement of the Singapore Cetex Order is appropriate under §§ 1521 or 1507 of the United States Bankruptcy Code (the "Bankruptcy Code"). In opposition, the Vertiv Entities maintain that it is this Court—and not the Singapore High Court—

5

that should determine whether the Cetex shares should be turned over to the Foreign Representative.

This Court held an evidentiary hearing on the Motion on November 19, 2024, at which the Court heard testimony from the following witnesses, including declarations on direct testimony, subject to cross-examination: the Foreign Representative, Singapore counsel to the foreign representative, Chua Beng Chye, President of the Vertiv Entities, Krishna Ghanta, and T.G.S. Mahesh, a former shareholder and Director of Wayne Burt.

### III. Analysis

The issue presented to this Court is whether recognizing and enforcing the Singapore Cetex Order is appropriate under §§ 1521 or 1507 of the Bankruptcy Code or the principles of international comity. For the reasons that follow, the Court finds that each of these alternate bases are satisfied under the facts and applicable law.

"Chapter 15 . . . favors extending comity to foreign insolvency proceedings." *Vertiv, Inc. v. Wayne Burt PTE*, *Ltd.*, 92 F.4th 169, 178 (3d Cir. 2024). Indeed, cooperation between courts of the United States and the courts and other competent authorities of foreign countries involved in cross-border insolvency cases is one of the principal objectives of Chapter 15. *See* 11 U.S.C. § 1501(a)(1)(A) and (B). "Consistent with section 1501, the court shall cooperate to the maximum extent possible with a foreign court or a foreign representative . . . ." 11 U.S.C. § 1525(a).

#### A. Enforcing the Singapore Cetex Order Is Appropriate under 11 U.S.C. § 1521

The Court begins its analysis with 11 U.S.C. § 1521. Section 1521 of the Bankruptcy Code states that:

> Upon recognition of a foreign proceeding, whether main or nonmain, where necessary to effectuate the purpose of this chapter and to protect the assets of the debtor or the interests of the creditors, the court may, at the request of the foreign representative, grant any appropriate relief, including—

6

> . . .
>
> 5) entrusting the administration or realization of all or part of the debtor's assets within the territorial jurisdiction of the United States to the foreign representative or another person, including an examiner, authorized by the court;
>
> . . .
>
> 7) granting any additional relief that may be available to a trustee, except for relief available under sections 522, 544, 545, 547, 548, 550, and 724(a).

11 U.S.C. § 1521(a). There is no question that steps taken by the Foreign Representative to secure the availability of the Cetex stock certificates for anticipated disposition consistent with Singapore law serves the interests of all creditors in the Singapore Liquidation Proceeding. The court may grant relief under § 1521 only if the interests of the creditors and other interested entities, including the debtor, are sufficiently protected. 11 U.S.C. § 1522(a). "The discretion that is granted [by § 1521] is 'exceedingly broad,' since a court may grant 'any appropriate relief' that would further the purposes of chapter 15 and protect the Debtor's assets and the interests of creditors, provided that the interests of creditors and other interested entities are sufficiently protected." *In re Olinda Star Ltd.*, 614 B.R. 28, 46 (Bankr. S.D.N.Y. 2020) (quoting *In re Atlas Shipping A/S*, 404 B.R. 726, 740 (Bankr. S.D.N.Y. 2009)).

As expressly stated in § 1501, cooperation between United States courts and foreign courts (and other competent authorities) involved in cross-border insolvency cases is one of the principal objectives of Chapter 15. Therefore, provided all interested parties are adequately protected by the Singapore Liquidation Proceeding pursuant to § 1522, the Court is inclined to grant the Foreign Representative's request to recognize and enforce the Singapore Cetex Order.

Based on the many proofs presented by the Foreign Representative, the Court finds that all interested parties are sufficiently protected in the Singapore Liquidation Proceeding. To begin

with, the Singapore insolvency system bears many similarities to the United States bankruptcy process. As attested to by Mr. Chua Beng Chye in his certification in support of the Motion:

1) The *pari passu* principle is a fundamental principle of Singapore's insolvency law and is enshrined in section 300 of the Singapore Companies Act, which provides that, subject to the provisions as to preferential payments (i.e., debts accorded statutory priority), the property of a company must, on its winding-up, be applied *pari passu* in satisfaction of its liabilities, and, as provided for in section 300 of the Singapore Companies Act, such distributions are subject to the statutory priority of debts as set out in section 328 of the Singapore Companies Act;
2) Under section 288 of the Singapore Companies Act, liquidators appointed by the Singapore court are officers of the court and are accountable to the Singapore court. More specifically, section 288 provides that certain powers of the Singapore Court may be delegated to the liquidators to be exercised or performed by the liquidator as an officer of the Singapore court and subject to the control of the Singapore court;
3) Creditors are entitled to submit their claims by filing proofs of debt with the liquidator. *See* Rule 91 of the Companies (Winding Up) Rules (the "CWU Rule(s)"), a subsidiary legislation of the Singapore Companies Act. If any creditor is dissatisfied with the decision of the liquidator in rejecting a proof (in whole or in part), the creditor may apply to the Singapore Court to reverse or vary the decision of the liquidator. *See* CWU Rule 93;
4) Liquidators are obligated to give notice to the company's creditors to inform them to file proofs of debt against the debtor. *See* CWU Rule 91;
5) Foreign creditors have the same rights under the Singapore Companies Act creditors located in Singapore in relation to the commencement of and participation in Singapore insolvency proceedings;
6) The Liquidator is empowered to take custody or control of the company's property under the supervision of the Singapore High Court; and
7) Once a winding-up order has been made, there is an automatic stay on all proceedings against the company. *See* Section 262(3) of the Singapore Companies Act. However, the Singapore Court has the discretion to grant permission to creditors to continue or proceed with proceedings against the company.

*See Decl. of Chua Beng Chye* ¶¶ 21-44. In *Vertiv, Inc. v. Wayne Burt PTE, Ltd.*, the Third Circuit reviewed and agreed with the District Court's findings with regard to the similarities between the Singaporean and United States insolvency regimes:

> Singapore shares the United States' policy of equal distribution of assets among similarly situated creditors, and Singapore law authorizes a stay or dismissal of Vertiv's civil action against Wayne Burt. Vertiv has presented no evidence to counter the District Court's finding about equal distribution of assets. And it is undisputed that Singapore law prohibits any action or proceeding against Wayne Burt without leave of the Singapore court. See App. 107 (citing § 262(3) of [the

> Singapore Companies Act], Chap. 50 ("When a winding up order has been made or a provisional liquidator has been appointed, no action or proceeding shall be proceeded with or commenced against the company except (a) by leave of the Court; and (b) in accordance with such terms as the Court imposes.")).

*Wayne Burt*, 92 F.4th at 183.

In the present matter, the Vertiv Entities do not dispute that they received notice of both the Singapore Liquidation Proceeding and the Cetex Shares Litigation. Under the Singapore Companies Act, Vertiv maintains a right to assert a claim in the Singapore Liquidation Proceeding by submitting a "proof of debt." If Vertiv is dissatisfied with the Foreign Representative's decision to disallow their proof of debt, Vertiv can apply to the Singapore High Court to review the Foreign Representative's decision. To date, Vertiv has neglected to submit a proof of debt. Likewise, Vertiv has had every opportunity to participate in the Cetex Shares Litigation, and has chosen not to. This decision has resulted in a default judgment, which is embodied in the Singapore Cetex Order. However, Vertiv may still apply to the Singapore High Court to set aside the judgement. Based on the foregoing, the Court finds that Vertiv's interests are sufficiently protected in the Singapore Liquidation Proceeding and the Cetex Shares Litigation, both in the substance of the law contained in the Singapore Companies Act and in its application.

### B. Enforcing the Singapore Cetex Order Is Appropriate under 11 U.S.C. § 1507

Enforcing the Singapore Cetex Order is also appropriate under 11 U.S.C. § 1507. Section 11 U.S.C. § 1507 states as follows:

> (a) Subject to the specific limitations stated elsewhere in this chapter the court, if recognition is granted, may provide additional assistance to a foreign representative under this title or under other laws of the United States.
>
> (b) In determining whether to provide additional assistance under this title or under other laws of the United States, the court shall consider whether such additional assistance, consistent with the principles of comity, will reasonably assure—

> (1) just treatment of all holders of claims against or interests in the debtor's property;
>
> . . .
>
> (3) prevention of preferential or fraudulent dispositions of property of the debtor;
>
> . . .

11 U.S.C. § 1507.

In the case before the Court, § 1507(b)(1) favors a grant of additional assistance from the Court in order to enforce the Singapore Cetex Order. Enforcing the Singapore Cetex Order assures just treatment of all holders of claims against the debtor's property. The Cetex Shares Litigation was an effort to marshal an asset of the Wayne Burt insolvency estate for the benefit of all of Wayne Burt's creditors. Enforcement of the Singapore Cetex Order will allow for the equal treatment of all of Wayne Burt's creditors, within the statutory framework of the Singapore Companies Act and under the supervision of the Foreign Representative and the Singapore High Court. Accordingly, enforcement of the Singapore Cetex Order is appropriate under § 1507(b)(1).

Section 1507(b)(3) also favors a grant of additional assistance from the Court. Enforcing the Singapore Cetex Order will prevent the potential preferential or fraudulent disposition of Wayne Burt insolvency estate property by entrusting the Cetex shares to the supervision of the Singapore High Court, until such time as the issue of their ownership can be decided with finality. As such, enforcement of the Singapore Cetex Order is also appropriate under § 1507(b)(3).

Sections 1507(b)(2), (4), and (5) are inapplicable to the facts of this this case. Therefore, they neither weigh in favor of or against a grant of additional assistance, nor do they warrant any further discussion from the Court.

### C. Enforcing the Singapore Cetex Order Is Appropriate as a Matter of Comity

Enforcing the Singapore Cetex Order is appropriate as a matter of comity. As a threshold matter, United States courts only consider extending adjudicatory comity to a pending proceeding

that is "parallel." *Wayne Burt*, 92 F.4th at 178. "[A] civil action in a United States court is 'parallel' to a foreign bankruptcy proceeding when: (1) the foreign bankruptcy proceeding is ongoing in a duly authorized tribunal while the civil action is pending before the United States court; and (2) the outcome of the United States civil action may affect the debtor's estate." *Id.* at 179-80 (citation omitted).

"Once the United States court is satisfied that the foreign bankruptcy proceeding is parallel, the party seeking the extension of comity must make its *prima facie* case . . . by showing that (1) the foreign bankruptcy law shares our policy of equal distribution of assets, and (2) the foreign law mandates the issuance or at least authorizes the request for the stay." *Id.* at 180.

Upon finding a *prima facie* case for comity, the United States court must make four additional inquiries, otherwise known as the *Philadelphia Gear* test, whether:

1) the foreign bankruptcy proceeding is taking place in a duly authorized tribunal,
2) the foreign bankruptcy court provides for equal treatment of creditors,
3) extending comity would be 'in some manner inimical to this country's policy of equality,' and
4) the party opposing comity would be prejudiced.

*Id.* (quoting *Philadelphia Gear Corp. v. Philadelphia Gear de Mexico, S.A.*, 44 F.3d 187, 194 (3d Cir. 1994)).

The first inquiry of the *Philadelphia Gear* test is satisfied if the foreign proceeding is parallel to the domestic proceeding. The second inquiry "relates to but differs from the *prima facie* case requirement that the foreign bankruptcy tribunal have a policy for equal distribution of assets." *Id.* "At the *prima facie* stage, a court asks whether the foreign bankruptcy tribunal provides for 'equality of distribution among creditors of equal priority.'" *Id.* (quoting *7 Collier on Bankruptcy* ¶ 1100.01 (16th ed. 2023)). By contrast, the second factor of the *Philadelphia Gear* test asks whether "any plan of reorganization is fair and equitable as between classes of creditors

that hold claims of differing priority or secured status." *Id.* (citing *Philadelphia Gear*, 44 F.3d at 194).

The third inquiry functions "as a catch-all consideration of whether 'forcing American creditors' to participate in the foreign bankruptcy proceedings would be unfair because those creditors receive substantially fewer protections to ensure equal treatment than they would in a domestic proceeding." *Id.* (citing *Remington Rand Corp. Del. v. Bus. Sys. Inc.*, 830 F.2d 1260, 1271 (3d Cir. 1987) (quoting *Banque De Financement, S.A. v. First Nat'l Bank of Boston*, 568 F.2d 911, 921 (2d Cir. 1977))). The United States Courts are guided by the following list of "indicia of procedural fairness" in assessing a foreign proceeding's procedural fairness:

1) whether creditors of the same class are treated equally in the distribution of assets;
2) whether the liquidators are considered fiduciaries and are held accountable to the court;
3) whether creditors have the right to submit claims which, if denied, can be submitted to a bankruptcy court for adjudication;
4) whether the liquidators are required to give notice to the debtors['] potential claimants;
5) whether there are provisions for creditors['] meetings;
6) whether a foreign country[']s insolvency laws favor its own citizens;
7) whether all assets are marshalled before one body for centralized distribution; and
8) whether there are provisions for an automatic stay and for the lifting of such stays to facilitate the centralization of claims.

*Id.* at 181 (quoting *Finanz AG Zurich v. Banco Economico S.A.*, 192 F.3d 240, 249 (2d Cir. 1999)). While these equality factors are instructive, "foreign bankruptcy proceedings need not function identically to similar proceedings in this country in order to be consistent with the United States' policy of equality." *Id.*

The fourth inquiry employs "the same factors used to evaluate whether the foreign jurisdiction's pending proceedings are inimical to this country's policy of equality under inquiry

12

three" and applies them to the specific party opposing comity to evaluate whether such protections have been available to that party in practice. *Id.*

Here, as in *Vertiv v. Wayne Burt*, it is clear that the Cetex Shares Litigation is parallel to the Motion presented for the Court's consideration. First, Wayne Burt is a debtor in a foreign insolvency proceeding before a duly authorized tribunal, the Singapore High Court, which is now pending in concurrence with this Chapter 15 Case. Notably, Vertiv has not challenged the Singapore High Court's jurisdiction over the Singapore Liquidation Proceeding. Second, the outcome of the Motion would have a direct impact on Wayne Burt's estate within the Singapore Liquidation Proceeding as it relates to the ownership of the Cetex shares. Therefore, the Singapore Liquidation Proceeding and the Chapter 15 Case are parallel for purposes of this comity inquiry.

The Third Circuit has already dispatched with the issue of whether a *prima facie* case for comity has been made and has determined that the *prima facie* requirement has been met. *Id.* at 183. Therefore, the Court now turns to the application of the *Philadelphia Gear* test.

The first prong of the *Philadelphia Gear* test is satisfied because, as stated above, the Singapore Liquidation Proceeding is parallel to the Chapter 15 Case. The second prong of the *Philadelphia Gear* test is inapplicable, as this set of facts does not present a plan of reorganization for the Court's consideration, leaving only the third and fourth prongs for the Court to evaluate.

The third inquiry of the *Philadelphia Gear* test—ensuring that the foreign proceeding's actions are consistent with the United States' policy of equality—is also satisfied. As detailed above, the Singapore insolvency laws are substantially similar to the U.S. bankruptcy system, provide comparable protections, and are consistent with the Bankruptcy Code's policy of equality.

Finally, the fourth *Philadelphia Gear* inquiry—whether the party opposing comity is prejudiced by being required to participate in the foreign proceeding—is also satisfied. Here,

Vertiv chose to contract with a Singaporean company, and entered into a Stock Pledge Agreement governed by the laws of either New York or Singapore. As Singapore law provides for the commencement of insolvency proceedings, it was foreseeable that Vertiv may have been required to participate in a foreign proceeding, and Vertiv cannot now complain of prejudice. Moreover, as stated previously, the Vertiv entities have received notice of both the Singapore Liquidation Proceeding and the Cetex Shares Litigation, and have had—and continue to have—the opportunity to participate in each. Accordingly, the fourth prong of the *Philadelphia Gear* test is met, and enforcing the Singapore Cetex Order is appropriate as a matter of international comity.

### IV. Conclusion

At the heart of the opposition to the relief sought by the Foreign Representative is an unacceptable premise that this Court should, in effect, stand in appellate review of the rulings made by the Singapore High Court. Such a position patently conflicts with principles of comity and the underlying objectives of Chapter 15. This is especially true where, as here, the contesting party maintains the capacity to pursue appeals and other necessary relief from the foreign court. For the foregoing reasons, pursuant to §§ 1521 and 1507 and the principles of international comity, as applied under the analysis developed by the Third Circuit, this Court finds that recognition and enforcement of the Singapore Cetex Order is appropriate in this instance, and the Motion is hereby granted. The Foreign Representative is directed to submit an Order consistent with this ruling.

Dated: December 6, 2024

_____
Honorable Michael B. Kaplan
United States Bankruptcy Judge